UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| ELIZABETH LEE HORTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:22-CV-85-DCP |
| | ) | |
| KILOLO KIJAKAZI,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal

Rules of Civil Procedure, and the consent of the parties [Doc. 14].  Now before the Court are

Plaintiff's Motion for Judgment on the Administrative Record [Doc. 9] and Defendant's Motion

for Summary Judgment [Doc. 12].  Elizabeth Horton ("Plaintiff") seeks judicial review of the

decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Kilolo

Kijakazi ("the Commissioner").  For the reasons that follow, the Court will **DENY** Plaintiff's

motion and **GRANT** the Commissioner's motion.

## I.    PROCEDURAL HISTORY

On August 10, 2019, Plaintiff filed an application for disability insurance benefits pursuant

to Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, claiming a period of disability that

began on September 1, 2015 [Tr. 175–77].  After her application was denied initially [*Id.* at 62–

78] and upon reconsideration [*Id.* at 79–104], Plaintiff requested a hearing before an ALJ [*Id.* at

---

[1]      Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration
("the SSA") on July 9, 2021.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure,
Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.  *See* 42 U.S.C. § 405(g).

118–19]. A telephonic hearing was held before the ALJ on January 14, 2021 [*Id.* at 34–61]. On March 1, 2021, the ALJ found that Plaintiff was not disabled [*Id.* at 14–29]. The Appeals Council denied Plaintiff's request for review on February 8, 2022 [*Id.* at 1–5], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on April 8, 2022, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.     ALJ FINDINGS

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2023.

2. The claimant has not engaged in substantial gainful activity since September 1, 2015, the alleged onset date (20 CFR 404.1571 et seq.).

3. The claimant has the following severe impairments: morbid obesity, tremor, lumbar spine degenerative disc disease status-post L4-L5 fusion, and left lumbar spine radicular syndrome. (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can stand and walk for two hours over an eight-hour workday; sit for six hours over an eight-hour workday. She can occasionally climb ramps and stairs but must never climb ropes, ladders or scaffolds. The claimant can occasionally balance, stoop, kneel, crouch and crawl and can have occasional exposure to extreme cold, vibration

2

and work place hazards, including unprotected heights and dangerous moving mechanical machinery. The claimant requires the ability to alternate sitting and standing every 30 minutes at the work-station.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on October 22, 1973 and was 41 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date. The claimant subsequently changed age category to a younger individual age 45-49 (20 CFR 404.1563).

8. The claimant has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 1, 2015, through the date of this decision (20 CFR 404.1520(g)).

[Tr. 19–29].

## III.    STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*,

3

581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Hum. Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Additionally, the Supreme Court has explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted). On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Hum. Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted). Furthermore, the Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed

4

waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority may be considered waived).

## IV.    DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).   An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1.  If claimant is doing substantial gainful activity, he is not disabled.
>
> 2.  If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3.  If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5.  Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that

5

accommodates his residual functional capacity ("RFC") and
vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is

"based on all the relevant medical and other evidence in [the claimant's] case record." 20 C.F.R.

§§ 404.1520(a)(4), -(e), 416.920(a)(4), -(e). RFC is the most a claimant can do despite his

limitations. §§ 404.1545(a)(1), 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529.

The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must

prove that there is work available in the national economy that the claimant could perform. *Her*

*v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137,

146 (1987)).

## V.    ANALYSIS

Plaintiff raises two arguments on appeal as to why the ALJ's decision should be remanded.

First, she argues the ALJ committed reversible error by failing to find she met or medially equaled

20 C.F.R. Part 404, Subpart P, Appendix 1, Section 1.04 (March 1, 2021) ("Listing 1.04")[2] [Doc.

10 pp. 7–9]. Second, she argues the ALJ erred by finding Plaintiff had the residual functional

capacity to perform sedentary work [*Id.* at 9–10]. In response, the Commissioner argues that both

the ALJ's decision regarding Listing 1.04 and her RFC determination are supported by substantial

evidence and that remand is therefore not warranted [Doc. 13 pp. 7–16]. Having reviewed this

---

[2]    Listing 1.04, which covered disorders of the spine at the time of the ALJ's decision, has
since been repealed and replaced with 20 C.F.R. Part 404, Subpart P, Appendix 1, Section 1.15
(2022). *See* Revised Medical Criteria for Evaluating Musculoskeletal Disorders, 85 Fed. Reg.
78164 (Dec. 3, 2020).

matter and considered the parties' arguments, the Court finds Plaintiff has not presented a valid basis for disturbing the Commissioner's decision.

### A.    Whether Plaintiff Meets or Medically Equals Listing 1.04

Plaintiff argues the ALJ erred by finding she did not meet or medically equal Listing 1.04, as the medical evidence from her treating physicians establishes all of the listing's requirements [Doc. 10 pp. 7–8]. The Commissioner responds that Plaintiff cannot show her impairments "meet" Listing 1.04 because the evidence she relies on fails to establish several of the listing's requirements [Doc. 13 pp. 7–11] and she cannot show her impairments "medically equal" Listing 1.04 because she fails to address the requirements of Social Security Ruling 17-2p [*Id.* at 11–12]. The Commissioner therefore argues that the ALJ's decision was supported by substantial evidence [*Id.* at 12]. For the reasons discussed below, the Court finds that the ALJ's determination that Plaintiff does not meet or medially equal Listing 1.04 is supported by substantial evidence.

### 1.    Applicable Law

A claimant will be found disabled at step three of the sequential evaluation if their impairments "meet" or "medically equal" one or more of the listings in the Listings of Impairments. *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (citing 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii)). "The Listing of Impairments . . . describes impairments the SSA considers to be 'severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience.'" *Id.* (quoting 20 C.F.R. § 404.1525(a)). "Each listing specifies 'the objective medical and other findings needed to satisfy the criteria of that listing.'" *Id.* (quoting 404.1524(c)(3)). "A claimant must satisfy all of the criteria to 'meet' the listing." *Id.* "An impairment that manifests only some of the criteria, no matter how severely, does not qualify." *Riccota v. Comm'r of Soc. Sec. Admin.*, No. 20-cv-1259-

7

TMP, 2022 WL 3045318, at \*13 (W.D. Tenn. Aug. 2, 2022) (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)).

"[A] claimant is also disabled if her impairment is the medical equivalent of a listing." *Reynolds*, 424 F. App'x at 414 (citing 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii)). An impairment is the medical equivalent of a listing if it is "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. §§ 404.1526(a), 416.926(a). "To make a finding of medical equivalence, an ALJ must have either: 1) a prior administrative finding from an agency doctor that supports the finding of medical equivalence, or 2) medical expert evidence; or 3) a report from the appeals council medical staff to support the finding of equivalence." *Strittmatter v. Kijakazi*, No. 5:22-CV-00692, 2023 WL 207907, at \*6 (N.D. Ohio Jan. 17, 2023 (citing Social Security Ruling ("SSR") 17-2p).

"Because the Listings permit a finding of disability based solely on medical evidence (without considering a claimant's vocational profile), the Commissioner applies a heightened evidentiary standard at step three." *Riccota*, 2022 WL 3045318, at \*13 (citing *Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 710 (6th Cir. 2013)). The listings are also "more restrictive" than the remainder of the five-step sequential analysis to the extent "the listings [] do not cover all illnesses and abnormalities that actually can be disabling" and they "exclude claimants who have listed impairments in a form severe enough to preclude substantial gainful activity, but not quite severe enough to . . . preclude any gainful activity." *Sullivan*, 493 U.S. at 533. Ultimately, it is a claimant's burden to demonstrate that his impairments meet or medically equal a relevant listing. *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

8

## 2. Whether the ALJ Erred by Finding Plaintiff did not Meet or Medically Equal Listing 1.04

Plaintiff argues the ALJ erred by finding that she did not meet or medically equal Listing 1.04 [Doc. 13 pp. 7–12]. At the time of the ALJ's decision, Listing 1.04 covered disorders of the spine, such as osteoarthritis, degenerative disc disease, and facet arthritis, that "result[ed] in compromise of a nerve root (including the cauda equina) or the spinal cord." 20 C.F.R. pt. 404, subpart P, app. 1, § 1.04. In order to meet the listing, a claimant was required to provide either "[e]vidence of nerve root compression," [s]pinal arachnoiditis," or "[l]umbar spinal stenosis resulting in pseudoclaudication." *Id.* As relevant to the present case,[3] the:

> [e]vidence of nerve root compression [must be] characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

*Id.* This Court has previously summarized Listing 1.04 as requiring (a) a spinal disorder, (b) that "result[s] in 'compromise of a nerve root," and (c) evidence of nerve root compression that is characterized by: "(1) neuro-anatomic distribution of pain, (2) limitation of motion of the spine, (3) motor loss, (4) sensory or reflex loss, and (5) sitting and supine positive straight[-]leg test results." *Chigano v. Kijakazi*, No. 3:20-CV-00256-HBG, 2021 WL 3934475, at *4 (E.D. Tenn. Sept. 2, 2021).

In this case, the ALJ found that "[Plaintiff's] lumbar degenerative disc disease fails to meet or medically equal listing 1.04" [Tr. 22]. The ALJ reasoned:

> Here, there is no indication that the claimant suffers from a nerve root compression, spina arachnoiditis, or cervical stenosis such that her impairments meet or

---

[3]     Plaintiff does not argue on appeal that she meets the listing due to either spinal arachnoiditis or lumbar spinal stenosis resulting in pseudoclaudication.

medically equal listing 1.04. Treatment notes show that the claimant underwent a lumbar fusion operation (anterior lumbar interbody fusion) in November 2014, following evidence of disc degeneration seen in her lumbar radiograph. Since undergoing the operation, while the claimant exhibited positive signs during straight leg raise assessment along with flexion and extension limitations in the lumbar spine (Ex. 7F), her gait and station post-surgery were "smooth" and she exhibited signs of an "upright" posture. (Ex. 11F/2; Ex. 7F/3 "station and gait testing including tandem and toe heel walking were normal"). Moreover, there is no evidence that the claimant requires the use of an assistive device for mobility. As such, the evidence does not support listing level severity of the claimant's musculoskeletal impairments.

[*Id.* at 23].

Plaintiff argues the ALJ erred because the evidence from her treating physicians[4] establishes that she meets all the requirements of Listing 1.04 [Doc. 10 pp. 7–11]. Specifically, she asserts she has several qualifying spinal disorders, including facet arthropathy at L4-5 and L5-S1, lumbar degenerative disc disease, and thoracic spine disc degeneration [*Id.* at 8 (citing Tr. 357, 351, 426)]. She further asserts that "[an] MRI of the lumber spine confirmed compromise of a nerve root" [*Id.* (citing Tr. 439)]. As to the remaining requirements, Plaintiff asserts she had nerve root compression characterized by "neuro-anatomic distribution of pain," "limitation of motion of the spine," "motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss," and, since "there is involvement of the lower back, positive straight-leg raising tests (sitting and supine)" [*Id.* (citing Tr. 404, 447, 436, 507, 513, 435, 396, 399, 449, 444)]. Plaintiff asserts "the sole question is whether the straight-leg tests were

---

[4] Plaintiff argues the evidence from her treating physicians "should be considered as having great persuasive weight" to the extent the physicians' opinions "are supported and consistent with [one another]" [Doc. 10 pp. 7–8]. Plaintiff also quotes 20 C.F.R. section 404.1520c [*Id.*], which sets forth the factors, including supportability and consistency, that the ALJ is required to consider and articulate at step four when determining the persuasiveness of medical opinions and prior administrative findings in the record. Plaintiff does not further develop this argument, however, or explain how the ALJ did not properly consider and articulate the supportability and consistency factors as to the relevant medical opinions.

10

sitting and supine," as "[t]he records simply state that straight leg raising tests were positive and don't specify whether they were sitting and supine" [*Id.*]. Finally, Plaintiff argues that "based on the medical records, even if it is found that one or more of the findings specified in [Listing 1.04] is not exhibited, a finding of medical equivalence is proper" [*Id.*].

The Commissioner responds that Plaintiff cannot meet several requirements of Listing 1.04 [Doc. 13 pp. 9–12]. Specifically, the Commissioners argues that the MRI evidence that Plaintiff relies on to argue nerve compromise has occurred does not actually show nerve compromise [*Id.* at 10–11]. Furthermore, "the other citations [to the record evidence] provided by Plaintiff likewise [do] not show she met the other requirements [of Listing 1.04] at the same time and for the required duration" [*Id.* at 11]. As to Plaintiff's argument regarding medical equivalence, the Commissioner contends this argument lacks merit to the extent it does not address the policy from Social Security Ruling 17-2p regarding what is required for an ALJ to find medical equivalence [*Id.* at 11–12]. For these reasons, the Commissioner argues that Plaintiff has failed to show that the ALJ's decision was not supported by substantial evidence [*Id.* at 12].

Having reviewed the parties' arguments, relevant potions of the record, and applicable authority, the Court finds that the ALJ's determination that Plaintiff did not meet or medically equal Listing 1.04 is supported by substantial evidence as Plaintiff has failed to put forth evidence for two of the listing's requirements, including compromise of a nerve root and positive straight-leg raising tests in both the sitting and supine positions.

### a. Compromise of a Nerve Root

Plaintiff has failed to present evidence that her nerve root was compromised. "[C]ompromise of a nerve root or the spinal cord is a threshold requirement for finding an impairment under Listing 1.04." *Morris v. Astrue*, No. 3:08-CV-77, 2009 WL 399447, at *5 (E.D.

11

Tenn. Feb. 18, 2009). Plaintiff's only statement regarding this threshold requirement is that "[an] MRI of the lumbar spine confirmed compromise of a nerve root" [Doc. 10 p. 8 (citing Tr. 439)].[5] However, neither Plaintiff's MRI nor her other diagnostic examinations from that same time period establish compromise of a nerve root.

Plaintiff underwent back surgery on November 17, 2014, at which time surgeons performed an anterior lumbar discectomy and interbody fusion of Plaintiff's L4-5 vertebrae disc space [Tr. 339–40]. Four years later, Plaintiff received four diagnostic examinations over a five-month period [Tr. 437, 439, 440, 445–46, 451]. The first was a November 29, 2018 lumber spine x-ray reviewed by radiologist, Avinash Sud, M.D. [*Id.* at 451]. Dr. Sud opined that the L4-L5 area where Plaintiff's discectomy and fusion had occurred was "suspicious of pseudoarthrosis formation" and recommended a high-resolution CT scan be performed [*Id.*]. Plaintiff then received an MRI of her lumbar spine on February 1, 2019 [*Id.* at 445–46]. The radiologist who reviewed the MRI results, Robert G. Hewgley, Jr., M.D., found that the neural foramina[6] in Plaintiff's L4-L5 region were "well maintained," there was "[n]o evidence for disc herniation" and "[n]o significant disc bulge" [*Id.* at 445]. As for Plaintiff's L5-S1 region, Dr. Hewgley found that there was "a mild disc bulge" and "mild bilateral foraminal narrowing more notable to the left"

---

[5]     The portion of the transcript that Plaintiff cites to actually contains the results of a set of lumbar spinal x-rays that were performed on March 9, 2019 [Tr. 439]. Plaintiff's MRI was conducted one month earlier, on February 1, 2019 [*Id.* at 437, 445–46].

[6]     "A neural foramen is an opening where a spinal nerve exits [a subject's] spine and branches out to other parts of [their] body." *Foraminal Stenosis*, Cleveland Clinic, https://my.clevelandclinic.org/health/diseases/24856-foraminal-stenosis (last visited April 19, 2023) "Foraminal stenosis is narrowing . . . around the nerves that come out of [a subject's] spinal cord." *Id.*

[*Id.*].[7]  On March 9, 2019, Plaintiff then received both a series of lumbar spine x-rays and a CT scan [*Id.* at 437, 439, 440–41].  The radiologist who reviewed the x-rays, Douglas Hayes, M.D., found the "[o]blique views demonstrate[d] mild foraminal encroachment at L4-L5" but "[o]therwise there [was] no significant foraminal encroachment" [*Id.* at 439].  The radiologist who reviewed the CT scan, Stephen Lemings, M.D., found "[n]o recurrent disc protrusion and no spinal or foraminal stenosis," and, while there was "[b]road-based bulging disc at L5-S1 level," there was no "spinal stenosis or foraminal stenosis" [*Id.* at 440].

The findings of these four diagnostic examinations—which were performed within a few months of one another and reviewed by separate radiologists and physicians—indicate that, at most, Plaintiff had mild foraminal stenosis or encroachment in the L4-L5 or L5-S1 region.  As the Commissioner points out, however, several courts within the Sixth Circuit and elsewhere have found such foraminal encroachment to be insufficient on its own to establish nerve root compromise [Doc. 13 pp. 10–11 (collecting cases)].  *See also Frankenfield v. Comm'r of Soc. Sec.*, No. 1:18-cv-1144, 2020 WL 838085, at *5 (W.D. Mich. Feb. 5, 2020) (finding the claimant did not meet Listing 1.04 despite an MRI that "revealed 'mild bilateral inferior neural foraminal narrowing with *suspected* very slight contact with the existing right and left nerve roots' at L4-L5"), *report and recommendation adopted*, 2020 WL 837339 (W.D. Mich. Feb. 20, 2020); *Newman v. Kijakazi*, No. 3:20-cv-00831-JRK, 2021 WL 3684091, at *7 (N.D. Ohio Aug. 4, 2021) (finding the ALJ's determination that "there is no evidence in the medical record that claimant has a compromised nerve root" was supported by substantial evidence despite an MRI that revealed

---

[7]     Plaintiff's treating physician, David H. Hague, M.D., summarized Dr. Hewgley's findings and the relevant MRI as showing "[m[ild disc bulge at L5-S1 with bilateral foraminal narrowing" [Tr. 443].

13

"mild bilateral inferior foraminal encroachment"), *report and recommendation adopted sub nom.*, *Newman v. Comm'r of Soc. Sec.*, No. 3:20 CV 831, 2021 WL 3679557 (N.D. Ohio Aug. 19, 2021). In addition, the Sixth Circuit itself has found such evidence to be insufficient to meet Listing 1.04. *See O'Brien v. Comm'r of Soc. Sec.*, 819 F. App'x 409, 415 (6th Cir. 2020) (finding "no evidence of nerve-root compression" despite an MRI showing "possible nerve-root contact"[8] because such "test[] did not show 'nerve root *compression*'").

The Court therefore finds that, in the absence of evidence other than mild foraminal narrowing, Plaintiff has failed to meet the threshold requirement of establishing nerve root compromise.

### b.    Positive Straight-Leg Testing Sitting and Supine

Even assuming Plaintiff could meet the threshold showing of nerve root compromise, she has also failed to provide evidence of positive straight-leg raising tests in both the sitting and supine positions. A lack of evidence indicating whether the positive straight-leg raising tests were performed in both the sitting and supine positions precludes a finding that Listing 1.04(a) has been met. *See O'Brien*, 819 F. App'x at 415 (finding "one positive straight-leg raising test" did not show "positive straight-leg raising test (sitting *and* supine)" as required by Listing 1.04 and, as such, "the plaintiff had failed to show *all* the criteria in Listing 1.04") (citing *Kallenbach v. Berryhill*, 766 F. App'x 518, 520 (9th Cir. 2019) (per curiam) for the proposition that "a claimant failed to meet Listing 1.04(A) criteria where medical records of positive straight-leg raising tests did not specify both sitting and supine testing"); *see also Scott v. Saul*, No. 19-cv-13200, 2021 WL

---

[8]    The MRI in that case "revealed 'moderate bilateral foraminal stenosis'" as well as "bone spurs that 'appear[] to contact the extraforaminal right L5 nerve root.'"  *O'Brien*, 819 F. App'x at 412.

1212666, at *3 (E.D. Mich. Mar. 31, 2021) (finding the fact that the plaintiff "has not pointed to any evidence in her medical records that she had a positive straight-leg raise test in both the supine and sitting positions" to be "fatal to her claim") (citing *O'Brien*, 819 F. App'x at 409; *Palaghe v. Comm'r of Soc. Sec.*, 2016 WL 1714733, at *14 (E.D. Mich. Apr. 28, 2016) (collecting cases)).

Plaintiff herself acknowledges that "[t]he records simply state that straight leg raising tests were positive and don't specify whether they were sitting and supine" [Doc. 10 p. 8]. The Court's own review of the applicable portions of the record confirms that none of the positive straight-leg raising findings indicate whether the tests were performed in both the sitting and supine positions. *See* Tr. 498 (finding as part of the consultative examination that Plaintiff's "[s]traight leg raise [was] positive at about 40 degrees standing" but otherwise failing to specify whether any sitting straight-leg raise was positive).[9] Thus, Plaintiff has also failed to set forth evidence of a second essential element of Listing 1.04.

A plaintiff "must point to specific evidence that demonstrates [s]he reasonably could meet or equal every requirement of the listing." *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014). Here, Plaintiff has failed to point to specific evidence demonstrating she reasonably could meet or medically equal at least two of Listing 1.04's requirements—compromise of a nerve root and positive straight-leg testing in both the sitting and supine positions. The Court therefore finds that the ALJ's determination that Plaintiff did not meet or medically equal Listing 1.04 is supported by substantial evidence and remand is not warranted. *See O'Brien*, 819 F. App'x at 415–16 (finding the ALJ's decision that the plaintiff did not meet or medically

---

[9] The ALJ, in turn, cited this finding from the consultative examination in analyzing whether Plaintiff met or medically equaled Listing 1.04 [Tr. 23 ("[T]he claimant exhibited positive signs during a straight-leg raise assessment along with flexion and extension limitations in the lumbar spine" (citing Ex. 7F))].

15

equal Listing 1.04 was supported by substantial evidence because the plaintiff's "MRI finding of possible nerve-root contact and the one positive straight-leg raising test fail to show 'nerve root compression characterized by . . . positive straight-leg raising test (sitting and supine)'" (citing Listing 1.04(A))).  The Court denies Plaintiff's first basis for remand.

### B.   Whether the ALJ's RFC Determination is Supported by Substantial Evidence

Plaintiff argues that remand is also warranted because the ALJ erred in finding she had the residual functional capacity to perform sedentary work [Doc. 10 pp. 9–10].  As noted previously, a claimant's RFC is "the most [they] can do despite [their] limitations," and is assessed "based on all the relevant evidence in [the claimant's] case record."  20 C.F.R. § 404.1545(a)(1).  In this case, the ALJ found:

> [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can stand and walk for two hours over an eight-hour workday; sit for six hours over an eight-hour workday.  She can occasionally climb ramps and stairs but must never climb ropes, ladders or scaffolds.  [She] can occasionally balance, stoop, kneel, crouch and crawl and can have occasional exposure to extreme cold, vibration and work place hazards, including unprotected heights and dangerous moving mechanical machinery.  [She] requires the ability to alternate sitting and standing every 30 minutes at the work-station.

[Tr. 23].

In challenging the ALJ's RFC determination on appeal, Plaintiff relies on her own testimony during the administrative hearing.  Specifically, Plaintiff argues the ALJ's RFC determination is not supported by substantial evidence to the extent Plaintiff testified at the administrative hearing that "she was unable to sit or stand for the required amounts of time to be able to perform even a reduced range of sedentary jobs" and, while the ALJ found Plaintiff's testimony was not credible, that determination was itself not supported by substantial evidence, especially to the extent "[Plaintiff's] testimony was consistent with objective medical evidence of

16

severe disorders of the spine" [Doc. 10 p. 10 (citing Tr. 48–49)].  For the reasons discussed below, the Court finds that the ALJ's evaluation of Plaintiff's subjective symptoms as well as her broader RFC determination are supported by substantial evidence.

### 1.    Applicable Law

A claimant's subjective complaints are one of many factors an ALJ is to consider when making the RFC finding.  *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  When a disability determination that would be fully favorable to the plaintiff cannot be made solely based on the objective medical evidence, an ALJ must analyze the symptoms of the plaintiff, considering the plaintiff's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in 20 C.F.R. sections 404.1529(c)(3) and 404.929(c)(3) and Social Security Ruling 16-3p, 2017 WL 5180304  ("SSR 16-3p").

> In evaluating subjective complaints of disabling pain, this court looks to see whether there is objective medical evidence of an underlying medical condition, and if so, then 1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or, 2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Stanley v. Sec'y of Health & Hum. Servs.*, 39 F.3d 115, 117 (6th Cir. 1994) (citing *Jones v. Sec'y, Health & Hum. Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991)); *see also Chopka v. Saul*, No. 5:18CV945, 2019 WL 4039124, at *6 (N.D. Ohio Aug. 27, 2019).

When evaluating a claimant's subjective complaints, the Social Security Administration "will review the case record to determine whether there are explanations for inconsistencies in the individual's statements about symptoms and their effects, and whether the evidence of record supports any of the individual's statements at the time he or she made them."  SSR 16-3p, 2017

17

WL 5180304, at *10.  The ALJ must consider certain factors when evaluating a claimant's alleged symptoms, including complaints of pain, including:

> (i)   the claimant's daily activities;
>
> (ii)   the location, duration, frequency, and intensity of the pain or other symptoms;
>
> (iii)   precipitating and aggravating factors;
>
> (iv)   the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate the pain or other symptoms;
>
> (v)   treatment, other than medication, a claimant receives or has received for relief of pain or other symptoms;
>
> (vi)   any measures the claimant takes or has taken to relieve the pain or other symptoms; and
>
> (vii)   other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529, 416.929.  The decision need not contain discussion and citations as to every possible factor to be sufficiently specific.  *See Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 664 (6th Cir. 2004).

An ALJ's determination of a claimant's credibility regarding statements concerning his symptoms is to be afforded "great weight and deference," and courts "are limited to evaluating whether . . . the ALJ's explanations for partially discrediting [a claimant's testimony] are reasonable and supported by substantial evidence in the record." *Schmiedebusch v. Comm'r of Soc. Sec. Admin.*, 536 F. App'x 637, 649 (6th Cir. 2013) (quoting *Jones*, 336 F.3d at 475–76 (6th Cir. 2003)); *see also Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016) (noting that SSR 16-3p removed the term "credibility" to "clarify that subjective symptom evaluation is not an examination of an individual's character"); *Barber v. Kijakazi*, No. 1:20-0064,

18

2022 WL 209268, at *6 (M.D. Tenn. Jan. 24, 2022), *report and recommendation adopted*, 2022

WL 853208 (M.D. Tenn. Mar. 22, 2022) (explaining that although the Commissioner removed the

term "credibility" when SSR 16-3p was implemented, "there appears to be no substantive change

in the ALJ's analysis and nothing to indicate that case law pertaining to credibility evaluations"

has been abrogated (citation omitted)).

### 2. The ALJ's RFC and Credibility Determinations

In this case, the ALJ found:

> The claimant in this case alleges a combination of severe physical impairments have significantly affected her ability to engage in work duties for a sustained period. In particular, the claimant testified that she is unable to sit more than thirty minutes at a time. . . .
>
> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because the severity of her impairments is not evidenced in the record as a whole. . . .

[Tr. 24].

Plaintiff acknowledges that "an [ALJ's] credibility finding is entitled to great deference"

but argues that "the "[ALJ's] adverse credibility finding was not supported by substantial

evidence" in this case and her "testimony was [otherwise] consistent with objective medical

evidence of severe disorders of the spine" [Doc. 10 p. 10]. In response, the Commissioner argues

the ALJ properly assessed the credibility of Plaintiff's subjective complaints by acknowledging

Plaintiff's statements in his decision but citing other evidence in the record that contradicted such

19

statements, including clinical observations, reports of Plaintiff's ability to perform daily activities, and Plaintiff's previous work as a clerical assistant [Doc. 13 pp. 13–14].

The Court finds that the ALJ's credibility determination, and RFC determination by extension, are supported by substantial evidence. The ALJ expressly considered Plaintiff's testimony in his decision—including Plaintiff's statements that she was unable to sit for more than thirty minutes at a time—and acknowledged that Plaintiff "has continued to exhibit signs of pain and weakness in the spinal region" [*Id.* at 24, 25]. Nevertheless, the ALJ discounted Plaintiff's subjective statements about her pain based on: (1) the fact that Plaintiff's treating physician released her to return to "full duty work" six months after her surgery; (2) Plaintiff's reported statements that "overall her symptoms have improved after having therapy"; (3) clinical observations from May 2015 that she was able to ambulate with a normal gait pattern and without an assistive device; (4) observations from a June 2018 assessment that indicated Plaintiff experienced a smooth gait and upright posture; (5) findings from the same assessment that showed she was able to perform all activities of daily life independently; and (6) Plaintiff's own statements from her January 2020 consultative examination in which she "described a normal day that began with getting herself ready for work and her teenage son ready for school, dropping him off, and heading to work" [*Id.* at 24–25]. This evidence—which included clinical observations, Plaintiff's own subjective statements, and reports of her daily activities—provided substantial evidence for the ALJ's finding that Plaintiff's testimony was not entirely credible. *See, e.g.*, *Fannin v. Berryhill*, No. 3:17-cv-236-DCP, 2019 WL 1434653, at *15 (E.D. Tenn. Mar. 29, 2019) (finding the ALJ's credibility determination was supported by substantial evidence when "the ALJ detailed [] various factors . . . , including inconsistences between Plaintiff's subjective allegations and the objective

20

medical evidence, Plaintiff's reported daily activities, [and] Plaintiff's statements that were inconsistent with the medical evidence of record . . . .").

While Plaintiff argues to the contrary, the only argument she advances in this regard is that "[her] testimony was consistent with objective medical evidence of severe disorders of the spine" [Doc. 10 p. 10 (citing *King v. Heckler*, 742 F.2d 968, 975 (1984); *Cohen v. Sec'y of Health & Hum. Servs.*, 964 F.2d 524 (1992))]. Plaintiff fails, however, to indicate what objective medical evidence her testimony was consistent with. Furthermore, even if Plaintiff did point to specific evidence that supported her testimony, "[a]n administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)); *see Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713–14 (6th Cir. 2012) ("As long as the ALJ cited substantial, legitimate evidence to support his factual conclusions, we are not to second-guess: If the ALJ's decision is supported by substantial evidence, then reversal would not be warranted even if substantial evidence would support the opposite conclusion." (internal quotations omitted)).

Finally, to the extent Plaintiff relies on *King* and *Cohen*, those cases are distinguishable. In *King*, the Sixth Circuit reversed the ALJ's adverse credibility determination because there was no medical evidence contradicting the plaintiff's subjective statements regarding their pain. *See King*, 742 F.2d at 975 ("Significantly, . . . we find no *conflicting* medical evidence in the record on the issue of pain."). Here, in contrast, there is evidence in the record contradicting Plaintiff's subjective statements of her pain, including the clinical observations, statements from Plaintiff, and reported daily activities that the ALJ relied on. *Cohen* is similarly distinguishable to the extent the ALJ in that case relied solely on the claimant's reported daily activities to discount her

subjective statements regarding her pain. *See Cohen*, 964 F.2d at 529–32 (finding the ALJ's reliance on the plaintiff's ballroom dancing, part-time enrollment in law school, and founding of a national support group did not support the ALJ's determination that the plaintiff could perform her past work); *Bryson v. Comm'r of Soc. Sec.*, No. 3:20-CV-667-CHB, 2022 WL 945318, at *9 (W.D. Ky. Mar. 29, 2022) (distinguishing *Cohen* to the extent, "[the plaintiff's] daily activities were just *one* of the *many* factors [the ALJ] considered when crafting [the plaintiff's] RFC."). Here, Plaintiff's daily activities were one of several pieces of evidence the ALJ relied on in discounting Plaintiff's testimony.

The Court therefore finds that the ALJ's determination regarding Plaintiff's subjective statements of pain is supported by substantial evidence. Since Plaintiff's only arguments as to why the ALJ's RFC determination was not supported by substantial evidence relate to this determination, the Court further finds that the ALJ's RFC determination is also supported by substantial evidence and need not be disturbed.

## VI.    CONCLUSION

Based on the foregoing, Plaintiff's Motion for Judgment on the Administrative Record [**Doc. 9**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 12**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

_Debra C. Poplin_
Debra C. Poplin
United States Magistrate Judge